IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLINTON L. LOPEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-344-STE |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 15-25). The Appeals Council denied Plaintiff's request for review. (TR. 1-6). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from April 10, 2015, the alleged onset date. (TR. 17). At step two, the ALJ determined that Plaintiff had the following severe impairments: history of arrhythmias, status post April 2015 episode of cardiac arrest requiring implementation of a cardiac defibrillator. (TR. 17). The ALJ also determined that Plaintiff had the following non-severe impairments: affective disorder and anxiety disorder. (TR. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 20).

At step four, the ALJ found that Plaintiff was not capable of performing his past relevant work. (TR. 23). The ALJ further concluded that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with the following additional restrictions:

> no climbing ladders, ropes, and scaffolds; occasional climbing stairs and ramps; occasional exposure to wetness and humidity and environmental irritants such as odors, fumes, dusts, and gases; and no exposure to hazards such as hazardous moving machinery, raw chemicals or solutions, and unprotected heights.

(TR. 21). *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

With this RFC, the ALJ made additional findings at step five. The ALJ consulted with a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. Given the limitations presented by the ALJ, the VE

2

identified three jobs from the Dictionary of Occupational Titles. (TR. 80-81). Relying upon the testimony of the VE, the ALJ concluded that Plaintiff was not disabled based on his ability to perform the identified jobs. (TR. 24-25).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in (1) failing to properly assess his RFC, specifically failing to consider functional limitations caused by his non-severe impairments; and (2) failing to properly evaluate the medical evidence, specifically the opinion of neuropsychologist, William Ruwe, Psy.D., Ph.D.;[1] the Veteran's Administration disability rating; and limitations imposed by Plaintiff's treating physicians. (ECF No. 14:4-8, 8-15). To the extent Plaintiff's arguments implicate his mental impairments, the Court agrees. And to the extent Plaintiff's arguments implicate his physical impairments, the Court does not reach those arguments as they may be affected by the ALJ's treatment of the case on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh

---

[1] Though Plaintiff refers to this physician as Dr. Rume, the record indicates that his surname is Ruwe. *See* TR. 1342, 1350, 1360.

3

the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ANALYSIS

### A. *RFC*

With respect to his mental impairments, Plaintiff argues that the ALJ failed to consider the effect of his non-severe mental impairments when determining Plaintiff's RFC. (ECF No. 14:4-8). The Court agrees. When determining a claimant's RFC, an ALJ must "consider the combined effect of all of the [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of such severity" as to warrant an award of benefits. 42 U.S.C. § 423(d)(2)(B); *see also Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (explaining that when "assessing [a] claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe"*). Here the ALJ failed to do so. At step two of the sequential evaluation the ALJ found that affective disorder and anxiety disorder were not severe impairments. (TR. 20). Subsequent to that finding, the ALJ "also" found that those non-severe impairments "impose mild limitation in understanding, remembering, or applying information[;] mild limitation in interacting with others[;] mild limitation in concentrating, persisting, or maintaining pace[;] and mild limitation in adapting or managing oneself." (TR. 20). The ALJ did not, however, consider these limitations, mild though she found them to be, when assessing the RFC. Indeed, neither the RFC itself nor the ALJ's discussion of the RFC determination contains any reference to or mention of Plaintiff's non-severe impairments or the limitations the ALJ found those impairments imposed. *See* TR. 21-23. This is reversible error. *See Wells*, 727 F.3d at

1065; *McFerran v. Astrue*, 437 F. App'x 634, 638 (10th Cir. 2011) (reversing because the ALJ neglected to discuss non-severe but medically determinable mental impairments as part of his RFC determination).

### B. *Medical Evidence*

Plaintiff further argues that the ALJ failed to properly evaluate the opinion of neuropsychologist Dr. Ruwe. (ECF 14:8-11). The Court agrees. Dr. Ruwe examined Plaintiff on October 16, 2017. Based on that examination, a thorough review of Plaintiff's medical history, and detailed consideration of Plaintiff's previous psychological testing, Dr. Ruwe had the following diagnosis:

> Unfortunately, [Plaintiff's] pattern of performance on validity measures strongly suggests that he was not able to engage optimally in the evaluation process. At this point, it would be inappropriate to diagnose a specific Neurocognitive Disorder (NCD). Nevertheless, in light of [Plaintiff's] report of ongoing affective distress and the psychological profile obtained during current testing, which appears to be generally valid, there is evidence of persistent anxiety and depression. Therefore, his current pattern of performance is most consistent with the diagnosis of an Anxiety Disorder, Unspecified, as well as a Depressive Disorder, Unspecified. It remains possible that he is suffering from affective distress of sufficient severity to adversely affect cognitive functioning. As the psychological distress is more effectively ameliorated, it is anticipated that [Plaintiff] will experience improvement in his cognitive functioning.

(TR. 1360). Additionally, Dr. Ruwe advised, *inter alia*, that "[m]ore aggressive treatment of the existing psychological distress is strongly recommended." (TR. 1358). Dr. Ruwe also suggested "behavioral strategies to promote more effective cognitive functioning," such as taking frequent breaks, allowing extra time to complete tasks, minimizing distractions in the environment, and other behaviors that could reasonably be expected to impact Plaintiff's ability to perform in a competitive workplace. *See* TR. 1358-59.

The ALJ gave Dr. Ruwe's opinion "partial, but not great or considerable weight." (TR. 20). The ALJ cites to the "reasons set forth above" in justifying her rejection of Dr. Ruwe's opinion, but in reviewing the ALJ's decision, the Court finds that the ALJ did not provide legitimate reasons for the rejection. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Ashcraft v. Berryhill, No. CIV-17-1386-BMJ, 2018 WL 4855215, at *3 (W.D. Okla. Oct. 5, 2018) ("[A]n ALJ is required to properly consider [examining physician's] opinions and provide legitimate reasons for discounting them."). Although not a treating physician, Dr. Ruwe examined Plaintiff and the ALJ was required to "evaluate," "consider," and "address" Dr. Ruwe' medical opinion. 20 C.F.R. §§ 404.1527(b), (c), 416.927(b), (c); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). While an examining medical-source opinion "may be dismissed or discounted," "the ALJ must provide specific, legitimate reasons" for doing so. Chapo v. Astrue, 682 F.3d 1285, 1291 (10th Cir. 2012) (internal quotation marks omitted); accord Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003).

At step two of the sequential evaluation, the ALJ reviewed Plaintiff's medical history from April 2015 to "August/September 2016," and found that nothing in the record supported finding that Plaintiff's psychiatric impairments were severe. See TR. 18-19. As set forth by the ALJ, however, "[i]n August/September 2016, the claimant reported that he was experiencing elevated levels of depression and anxiety." (TR. 19). In evaluating Plaintiff's claims of worsening psychiatric problems, the ALJ addressed Dr. Ruwe's opinion only as follows:

> An October 2016 neuropsychological evaluation yielded some conflicting results leading the examiner to conclude that there was not sufficient evidence to support a diagnosis of neurocognitive disorder, but sufficient evidence to support diagnoses of anxiety disorder unspecified and depressive disorder unspecified.

6

(TR. 19). The ALJ did not address Dr. Ruwe's contention that Plaintiff was possibly "suffering from affective distress of sufficient severity to adversely affect cognitive functioning," the suggested behavioral modifications, the "strongly recommended" "more aggressive treatment," or anything else in Dr. Ruwe's 14-page report. *See* TR. 19-20.

Additionally, the ALJ stated that:

> Subsequent to August/September 2016, the claimant has persistently been described as alert, fully oriented, and displaying no apparent distress and mental status examination within normal limits. Additionally, the claimant has persistently been rated as experiencing no significant to minor difficulties meeting personal needs related to accessing care, housing, social supports, economics, psychological status, and functional status.

(TR. 19). However, the ALJ did not provide record citations to support these statements. And the Court's review has found that the record indicates that, in addition to Plaintiff's complaints of executive functioning and memory difficulties with secondary anxiety and irritability, a mental status exam conducted August 18, 2016, by Anna Craycraft, Ph.D., noted memory impairments. (TR. 1230). Dr. Craycraft then referred Plaintiff to Dr. Ruwe for comprehensive neuropsychological evaluation. (TR. 1227-33). The ALJ did not discuss Dr. Craycraft's examination and, as set forth above, she only minimally mentioned portions of Dr. Ruwe's evaluation.

After a thorough review of the record, the Court finds that the ALJ's treatment of the evaluations by Dr. Craycraft and Dr. Ruwe was error requiring reversal and remand for further administrative proceedings. While an ALJ is not required to discuss each item of evidence in the record, she may not rely solely on favorable evidence without giving adequate reasons for discounting evidence upon which she chooses not to rely. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[I]n addition to discussing the evidence

7

supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) ("The ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability."). Here, the ALJ did not "engag[e] in the proper legal analysis" and thus, reversal is required. *See Hamlin*, 365 F.3d at 1219 (10th Cir. 2004).

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative development.

ENTERED on November 15, 2018.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE